See also 131 F.Supp. 921.

## The WESTERN PACIFIC RAILROAD COMPANY
### v.
### The UNITED STATES.

## BANGOR AND AROOSTOOK RAILROAD COMPANY
### v.
### The UNITED STATES.

## SEABOARD AIR LINE RAILROAD COMPANY
### v.
### The UNITED STATES.
### Nos. 42-54, 104-54, 250-54.

United States Court of Claims.
June 7, 1955.

Lawrence Cake, Washington, D. C., for plaintiff.

Morton Hollander, Washington, D. C., with whom was Warren E. Burger, Asst. Atty. Gen., for defendant. Martin E. Rendelman, New York City, was on the briefs.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

## 920

**LARAMORE, Judge.**

These cases present the same questions which the court considered and answered in the case of Union Pacific Railroad Company v. United States, 111 F.Supp. 266, 125 Ct.Cl. 390. A reconsideration of the question of classification of the articles as "bombs or mines" under item 1820 of Consolidated Freight Classification No. 16, leads us to the same conclusion. The facts are the same and no purpose would be served by reciting again the historical facts in our former opinion and the facts in the instant case.

The Government's contention that these cases should be suspended pending the referral to the Interstate Commerce Commission for a determination as to the reasonableness of the rates, is without merit. The statute of limitations has run against the Government's right to have the reasonableness determined. A. J. Phillips Co. v. Grand Trunk Western Railway Company, 236 U.S. 662, 35 S.Ct. 444, 59 L.Ed. 774; Midstate Horticultural Co., Inc., v. Pennsylvania Railroad Co., 320 U.S. 356, 64 S.Ct. 128, 88 L.Ed. 96; United States v. Director General, 80 I.C.C. 143, 150–151; United States v. Southern Railway Company, 286 I.C.C. 203.

The defendant contends that a question of fact exists as to whether the plaintiffs Bangor and Aroostook Railroad Company and Seaboard Air Line Railroad Company are estopped from claiming the higher rate. The defendant says these plaintiffs are estopped from recovering the higher rate for some of the shipments because the Official Classification Committee, which is "a creation of the railroads," on November 23, 1943, orally and subsequently in writing, informed the Army that the proposed shipments without bursters or fuses were not dangerous and ruled that they should be rated by analogy as empty aerial bombs under item 1895, which was a lower rate than item 1820. This ruling was subsequently rescinded and admitted to be a mistake by the Committee and also by the defendant in the Union Pacific Railroad

case, supra. We do not see how the defendant could reasonably have been misled or injured by the ruling, especially when the plaintiffs promptly billed the defendant at the first-class rate and the defendant paid that rate and continued to make the shipments at that rate. Moreover, the only cases cited by the defendant on the availability of the defense of estoppel to the Government in these railroad cases are Oregon-Washington Railroad & Navigation Company v. United States, 255 U.S. 339, 41 S.Ct. 329, 65 L. Ed. 667; and Western Pacific Railroad Company v. United States, 255 U.S. 349, 41 S.Ct. 332, 65 L.Ed. 671. Both of these cases involved the acceptance by the railroad of shipments at the lower rate and gross acquiescence in the shipments at that rate. The Supreme Court held that the railroads were precluded from recovering the higher rate because of their gross acquiescence. There is no acquiescence in these cases. The railroad billed and was paid the higher rate and suit was commenced shortly after the Government set off the sums here in suit against money otherwise due the plaintiffs. See St. Louis, Brownsville & Mexico Railway Company v. United States, 268 U.S. 169, 45 S.Ct. 472, 69 L.Ed. 899.

Plaintiffs' motions for summary judgment are granted. Judgment will be entered for The Western Pacific Railroad Company in the amount of $14,280.06. Judgment in Bangor and Aroostook Railroad Company and Seaboard Air Line Railroad Company is suspended pending the filing of a stipulation of the exact amount due, or upon failure of filing a stipulation within 45 days the cases will be referred to a commissioner of this court for a report on the amounts due.

It is so ordered.

WHITAKER and LITTLETON, JJ., concur.

MADDEN, Judge (dissenting).

"Give a dog a bad name and hang him" is a saying of the people, but it is not a legal maxim. It is hard to think of a name for the inert, non-incendiary ob-

jects here involved other than "incendiary bombs." That is what the objects were made for; if they are not used for that purpose they must be scrapped. If a sightseer in a factory asked what those queer-shaped objects were, the answer would be "incendiary bombs." But if he then started to run, he would be given further reassuring information about them.

In law, as in life, words are used for a purpose, and a mere name may be all that is needed in one situation while in another many qualifying words will have to be appended to the name. Where, as in the instant case, the whole reason and justification for charging high rates for the carriage of objects is their incendiary and extra-hazardous character, the mere name is not sufficient to put goods in their proper classification. If we go by the name, our Government and our taxpayers are made to pay for insurance against non-existent risks, and the railroads are getting something for nothing.

In other branches of the law such as laws forbidding the transportation or storage of explosives, a court would make short work of a case involving explosives that would not explode. I see no reason why the law of freight rates should be less rational. "Reason is the life of the law." If the reason for the high freight rate is the incendiary quality of the freight, and if the freight does not have the incendiary quality, the reason for the high rate vanishes and the rate should vanish with it.

The plaintiffs do not attempt to justify the high rates on the basis of high hazards. They simply say, it is so written in the tariffs. Incendiary bombs, high rates. These are incendiary bombs. *Ergo,* high rates. This kind of pure literalism has no place in the law.

I would dismiss the plaintiffs' motion for summary judgment and let the Government prove, if it can, that the objects in question are not incendiary and that to name them incendiary bombs for the purpose of these tariffs is to misname them. Our Union Pacific case is, of course, not *res adjudicata* of this case

which involves other plaintiffs. If we should be persuaded in this case that our decision in that case was wrong, we would regret that error, but not repeat it.

JONES, C. J., joins in the foregoing dissent.