CROOK v. FORD.

1. Fraud—Statements Relating to Future May Be Basis of Fraud Action.

Generally, breach of a promise does not constitute fraud, but the mere fact that statements relate to the future will not preclude liability for fraud if the statements were intended to be, and were accepted as, representations of fact, and involved matters peculiarly within knowledge of the speaker.

2. Same—False Opinions and False Promises Actionable.

If experienced builders in charge of erection of a building gave a false opinion of matters of fact relating to the foundation of the building, and made false promises as to what they could and would do to remedy its condition, to induce plaintiffs to enter into contract of purchase, and plaintiffs relied thereon to their injury, such opinions and promises are actionable, and it is not necessary that they be the sole inducing cause of the contract.

3. Same—When Fraudulent Statement Results in Fraud.

A fraud results from a fraudulent statement, if the erroneous belief caused by the statement is a material contributing factor in deciding the other party to enter into the contract.

4. Same—Sufficiency of Evidence.

In action for fraud, evidence tending to show that plaintiffs were induced to enter into contract of purchase by means of false opinions and false promises as to what defendants could and would do to remedy defects in foundation of building, held, sufficient to take case to jury.

Error to Wayne; Jayne (Ira W.), J. Submitted January 16, 1930. (Docket No. 42, Calendar No. 34,682.) Decided March 6, 1930.

Assumpsit by Harold W. Crook and others against Hiram E. Ford and Lewis F. Burlingame, copart-

Statements regarding future as a fraud, see annotation in 35 L. R. A. 420, 437.

ners doing business as Ford & Burlingame, for fraud in inducing them to enter into a land contract. From a verdict and judgment for plaintiffs, defendants bring error. Affirmed.

*George D. O'Brien* and *Walter J. Dunne,* for plaintiffs.

*Maxwell W. Benjamin,* for defendants.

POTTER, J. Plaintiffs, vendees of city lots in Detroit, were desirous of having built on one of them an income bungalow. Defendants were to acquire title to one of plaintiffs' lots on which was to be erected under a verbal contract with defendants a building partially complete, the second story of which was to be finished by plaintiffs. This verbal agreement was made in March, 1926, and defendants were to fully perform their part of the contract by June 5, 1926.

After the house was up, and according to defendants fully completed on their part, a written land contract was entered into between plaintiffs and defendants, whereby plaintiffs again became vendees of the lot, in May, 1926, which land contract was dated back to March 5, 1926. The land contract in part confirmed the terms of the verbal contract as to plaintiffs finishing the second story of the house. It provided:

"All the inside finish on the second floor including lathing, plastering, plumbing, wiring, electric fixtures, painting, decorating, lighting fixtures, labor, inside carpenter finish and all work necessary to complete the second floor ready for occupancy is to be completed and paid for by the purchaser, for which credit has been given on down payment with interest upon interest overdue hereon from maturity

to date of payment, at the rate of seven per cent. per annum.''

Plaintiffs entered into possession. They claim the foundations of the house were not constructed in a workmanlike manner, though so represented to them by defendants, and that by reason thereof it settled, the cellar walls cracked, the basement floor cracked and settled, the plaster on the walls and ceilings cracked, the paper on the walls cracked, the floors took on undulating curves, the doors would not open and close, the house sank in the middle, the furnace tipped over, and defendants, after plaintiffs' tenants occupied the house, entered the premises, jacked up the house and put new foundations under the center and sought to repair it, making such a mess that plaintiffs' tenants moved out, whereupon plaintiffs refused, because of the condition of the building, to pay the monthly payments due on the land contract, and were subsequently formally ejected by summary proceedings before a circuit court commissioner. Plaintiffs, after such summary proceedings were instituted by defendants to recover possession of the premises, filed a bill in equity praying that the verbal agreement between the parties as to the building of the house be decreed to be an integral part of the contract for the purchase of the property by plaintiffs from defendants; that defendants be decreed to perform such revised contract; that the declaration of foreclosure of said land contract by defendants be decreed null and void, and if the court should find the construction of the house as agreed on has become impracticable by the acts of defendants, the land contract be rescinded and defendants be decreed to pay plaintiffs the full amount plaintiffs have expended by virtue of the contract; that defendants be restrained from further prosecuting the suit to

recover possession of the premises before the circuit court commissioner of Wayne county, and for other relief.

Upon the filing of this bill, and without giving the statutory bond, an injunction was issued; defendants answered, and on April 25, 1927, the case was ordered transferred to the law side of the court. Subsequently a declaration was filed by plaintiffs against defendants, consisting of three counts. January 9, 1929, the case came on for trial before the court and a jury and resulted in a verdict of $1,000 for plaintiffs. Defendants bring error. The principal question raised by defendants' several assignments of error is that there was no evidence to sustain the plaintiffs' claim of fraud. The court treated the contract as rescinded by plaintiffs. Plaintiffs introduced proof tending to show they expended $1,211.71 in the completion of the second story of the building and also introduced proof tending to show that while defendants admitted prior to the making of the land contract the house was not as it should be, they said they would fix it. Defendants had an assignment of other property of plaintiffs which they threatened to take unless the land contract was signed. They claimed defendants represented the house was complete, whereas it had no proper foundations, and by reason thereof the walls cracked, the basement floors cracked, the house was out of plumb and had to be jacked up, and that therefore the house, which included its foundations, was not completed at the time the contract was entered into as plaintiffs were induced to believe it was. They claim they knew before they entered into the contract that it had sunk, but had been jacked up and the foundations strengthened, but they now claim that this change in the foundations was of no

particular value, did not carry out the contract, did not make the foundation sufficient, and was not done in a workmanlike manner, and that the defendants did not disclose to the plaintiffs the cause of the trouble, and that by reason of the failure of the defendants to complete the house, including the foundations, as they agreed to do, the floors became wavy; there is a low spot in one corner of the room, the basement floor cracked, the cement blocks constituting the cellar walls cracked; there is a belt in the center of the basement; the furnace fell down, the sub-flooring was cut through by the defendants so as to allow one side of the house to settle without carrying down the other, the paper on the walls was cracked, and the house was not in substantial compliance with the contract; that plaintiffs believed and relied upon the representations upon the part of the defendants that they would build the house in a good and workmanlike manner, and that in reliance upon such belief induced by defendants, they expended $1,211.71.   Considerable testimony was introduced bearing upon when the plaintiffs had knowledge of the defective condition of the house and when the house started to sink; one of defendants testified that he noticed the apparent sinking of the foundations a couple of days after the stanchions to support the superstructure were placed in the cellar, and at another time testifying that it started to sink after the plaster was put on the second floor. It is claimed by defendants that, though they made all the promises claimed by plaintiffs, their violation amounts only to a breach of agreement, and cannot be considered as the basis of fraud.

It is a general rule that the breach of a promise does not constitute fraud; but the mere fact that statements relate to the future will not preclude

liability for fraud if the statements were intended to be, and were accepted as, representations of fact, and involved matters peculiarly within the knowledge of the speaker. 26 C. J. p. 1090. Promissory statements were allowed to be shown as the basis of fraud in *McDonald* v. *Smith,* 139 Mich. 211.

In this case, where defendants were experienced builders, in charge of the erection of the building, if they gave a false opinion of matters of fact, relating to the foundation of the building, and made false promises as to what they could and would do to remedy its condition, to induce plaintiffs to enter into the contract of purchase, and these were relied upon by plaintiffs to their injury, such opinions and promises were actionable. *Collins* v. *Jackson,* 54 Mich. 186; *Hubbard* v. *Oliver,* 173 Mich. 337. It is not necessary that such opinions and promises were the sole inducing cause of the contract. As a rule there are many factors which induce one to enter into a contract. A fraud results from a fraudulent statement, if the erroneous belief caused by the statement is a material contributing factor in deciding the other party to enter into the contract. Morawetz, Elements of the Law of Contracts (2d Ed.), p. 41; 20 Cyc. p. 41.

We think there was sufficient to carry the case to the jury, and that the verdict resulted in no injury to defendants, who have the property they built plus the labor and material furnished and paid for by plaintiffs. The other assignments are without merit, and judgment is affirmed, with costs.

WIEST, C. J., and BUTZEL, CLARK, McDONALD, SHARPE, NORTH, and FEAD, JJ., concurred.