JOHNSON v WAUSAU INSURANCE COMPANY

Docket No. 281624. Submitted March 11, 2009, at Detroit. Decided
March 24, 2009. Approved for publication May 12, 2009, at 9:00
a.m.

Tammy Johnson, as guardian of Nancy Eastman, a legally incapaci-
tated person, brought an action in the Genesee Circuit Court
against Wausau Insurance Company, Nationwide Indemnity, Inc.,
and others. The plaintiff, the caregiver for Eastman (who sus-
tained severe brain injuries in an automobile accident), alleged
breach of a no-fault insurance contract and fraud concerning the
failure of Wausau and Nationwide (which took over Wausau) to
inform the plaintiff and Dorothy Bencheck (Eastman's prior
caregiver) that they were entitled to more than the $20 or $21 a
day they received from Wausau and Nationwide for their care of
Eastman when Bencheck and the plaintiff asked about additional
compensation. The court, Joseph J. Farah, J., granted partial
summary disposition for Wausau and Nationwide, ruling that the
action arose from the no-fault act and that any recovery of no-fault
personal protection insurance benefits that accrued before July 20,
2005, was barred by the one-year-back rule of MCL 500.3145(1),
which could not be avoided because the plaintiff failed to establish
a fraud claim. The plaintiff appealed by leave granted.

The Court of Appeals *held*:

1. Under MCL 500.3145(1), a claimant's recovery for personal
protection insurance benefits is limited to losses incurred during
the year that precedes the commencement of an action. In unusual
circumstances such as fraud, a court may invoke its equitable
power to avoid application of the one-year-back rule.

2. The general rule is that to constitute actionable fraud, it
must appear (1) that the defendant made a material representa-
tion, (2) that it was false, (3) that when the defendant made it the
defendant knew that it was false, or made it recklessly, without
any knowledge of its truth and as a positive assertion, (4) that the
defendant made it with the intention that it should be acted upon
by the plaintiff, (5) that the plaintiff acted in reliance upon it, and
(6) that the plaintiff thereby suffered injury.

3. Because some insureds may attempt to circumvent the one-year-back rule by asserting a common-law fraud claim against an insurer, trial courts must exercise special care in assessing these types of fraud claims. Courts must carefully consider whether an insured can satisfy the reliance factor. Fraud cannot be perpetrated upon one who has full knowledge to the contrary of a representation. There can be no fraud when a person has the means to determine that a representation is not true. In this case, the plaintiff cannot establish that she or Bencheck relied on the alleged fraudulent misrepresentation by the claims adjuster. The representation did not involve information or facts that were exclusively or primarily in the control of the insurers, and the plaintiff and Bencheck had the ability to determine whether the representation was true by consulting a lawyer.

Affirmed.

INSURANCE — NO-FAULT — PERSONAL PROTECTION INSURANCE BENEFITS — ACTIONS — ONE-YEAR-BACK RULE — FRAUD.

A common-law action for fraud concerning an insurer's alleged misrepresentation about no-fault personal protection insurance benefits is not subject to the one-year-back rule of the no-fault act; in determining actionable fraud, a court must carefully consider whether the insured can satisfy the detrimental reliance element of fraud (MCL 500.3145[1]).

*Bagley & Langan P.L.L.C.* (by *Ronald C. Puzio, Jr.*) for Tammy Johnson.

*The Law Office of Gail L. Storck* (by *Gail L. Storck*) for Wausau Insurance Company and Nationwide Indemnity, Inc.

Before: SAAD, C.J., and BANDSTRA and HOEKSTRA, JJ.

PER CURIAM. In this action for breach of a no-fault insurance contract and fraud, in which plaintiff, Tammy Johnson, sought payment of personal protection insurance benefits, plaintiff appeals by leave granted the trial court's order granting partial summary disposition to defendants Wausau Insurance Company and Nationwide Indemnity, Inc. Because the one-

year-back rule of MCL 500.3145(1) bars plaintiff's no-fault claim for benefits that accrued before July 20, 2005, and because plaintiff cannot establish the reliance element of her fraud claim, we affirm.

### I. BASIC FACTS AND PROCEDURAL HISTORY

On October 5, 1983, Nancy Eastman, then 10 months old, suffered severe brain injuries in an automobile accident. Eastman's parents were unable to care for her after her release from a hospital. Dorothy Bencheck agreed to care for Eastman and subsequently became Eastman's legal guardian.

Defendant Wausau Insurance Company[1] insured Eastman's father through a no-fault insurance policy. According to letters from defendant, as a settlement for any claims Eastman may have had against her father,[2] it paid $37,500 to Eastman. The settlement money was placed in a fund under the protection of the probate court. Defendant also agreed to pay Bencheck $20 a day for her care of Eastman.

According to Bencheck, she called defendant "constantly" on "[d]ifferent occasions, different times" about whether she was entitled to additional benefits for caring for Eastman. She was told, usually by Albert Abdey, a claims adjuster, that defendant had paid everything that it was going to pay to Eastman and that she should petition the probate court to get money from the settlement proceeds. Bencheck testified that defendant never informed her that she was entitled to attendant

---

[1] It appears from the record that, at some time after the accident, defendant Nationwide Indemnity took over Wausau Insurance Company. We will collectively refer to Wausau Insurance Company and Nationwide Indemnity as defendant.

[2] Eastman suffered her injuries in the automobile accident because she had not been placed in a child safety seat.

care benefits that were paid on an hourly basis. In 1989, Bencheck suffered financial difficulty, and after the probate court denied a request for money from Eastman's settlement proceeds, she was no longer able to care for Eastman.

In April 1990, plaintiff took over the care of Eastman. She received $20 a day from defendant for caring for Eastman. The payment, at some time, increased to $21 a day. When plaintiff inquired about the increase, Abdey replied that it was a cost of living adjustment. There was no testimony from plaintiff that she ever asked Abdey if she was entitled to receive additional benefits for caring for Eastman.

Abdey admitted that he never advised either Bencheck or plaintiff that they were entitled to attendant care benefits based on an hourly rate. He did not believe they were entitled to such benefits because such benefits "make[] it [i.e., caring for the disabled person] a job." Further, he did not recall Bencheck ever asking him if she was entitled to additional benefits. And, even if she had, Abdey would not have advised her of any benefits because defendant was paying the benefits it had agreed to pay in the settlement.

In the summer of 2006, plaintiff sued defendant for breach of contract. The complaint was later amended to include a claim for fraud or fraudulent misrepresentation. Plaintiff alleged that defendant, despite having knowledge that Eastman required supervision 24 hours a day, never told or advised her that she was entitled to attendant care benefits. Plaintiff also alleged that, when she inquired about whether she was entitled to additional benefits, defendant told her that no additional benefits were available to her. Plaintiff alleged that defendant made material representations that were false, made the representations knowing that they

were false or made them recklessly without knowledge of the truth, made the representations with the intent that plaintiff would rely on them, and that plaintiff did rely on the representations.

Defendant moved for partial summary disposition under MCR 2.116(C)(8) and (10). Defendant argued that, because plaintiff's cause of action arose out of the no-fault act, MCL 500.3101 *et seq.*, the one-year-back rule of MCL 500.3145(1) barred plaintiff's claim for benefits that accrued before July 20, 2005. Defendant further argued that plaintiff had not shown that it had committed any fraud or misrepresentation. In response, plaintiff argued that defendant had made material misrepresentations concerning the benefits available for Eastman's care because defendant, despite knowing that Eastman required constant supervision, represented to plaintiff and Bencheck that they were not entitled to any benefits beyond the $20 (and later $21) daily payments. The trial court granted the motion for partial summary disposition. Because it concluded that there was no factual issue concerning whether the elements of fraud had been established, the trial court refused to exercise its equitable power to avoid application of the one-year-back rule. It barred plaintiff from recovering any personal protection insurance benefits that were available for the care of Eastman under the no-fault act before July 20, 2005.

Plaintiff moved this Court for leave to appeal the trial court's order. We granted plaintiff's application. *Johnson v Wausau Ins Co*, unpublished order of the Court of Appeals, entered June 6, 2008 (Docket No. 281624).

## II. ANALYSIS

On appeal, plaintiff maintains that the trial court erred by granting defendant's motion for partial sum-

mary disposition because when the submitted documentary evidence is considered in a light most favorable to her, questions of material fact exist regarding whether defendant committed fraud in connection with its failure to provide attendant care benefits to plaintiff and Bencheck for their care of Eastman. In particular, plaintiff argues that Abdey intentionally misrepresented that attendant care benefits based on an hourly rate were not available for the care of Eastman and that plaintiff and Bencheck relied on his representations to their financial detriment, evidenced by the fact that they just accepted the $20 (and later $21) daily payments.

### A. STANDARD OF REVIEW

This Court reviews de novo a trial court's decision on a motion for summary disposition. *Gillie v Genesee Co Treasurer*, 277 Mich App 333, 344; 745 NW2d 137 (2007). Defendant moved for summary disposition under MCR 2.116(C)(8) and (10). The trial court did not specify under which subrule it was granting the motion. Because the parties relied on matters beyond the pleadings, we will treat the motion as being granted under MCR 2.116(C)(10). *Silberstein v Pro-Golf of America, Inc*, 278 Mich App 446, 457; 750 NW2d 615 (2008). A motion for summary disposition brought pursuant to MCR 2.116(C)(10) tests the factual sufficiency of the complaint. *Mulcahey v Verhines*, 276 Mich App 693, 698; 742 NW2d 393 (2007). The Court must consider all the pleadings, affidavits, depositions, admissions, and other documentary evidence submitted by the parties in a light most favorable to the nonmoving party. *Id.* at 698-699. Summary disposition is properly granted if the evidence presented establishes that no genuine question of material fact exists and the moving party is entitled to judgment as a matter of law. *Id.* at 699.

B. APPLICABLE LAW

"Under MCL 500.3107, family members are entitled to reasonable compensation for the services they provide at home to an injured person in need of care." *Bonkowski v Allstate Ins Co*, 281 Mich App 154, 164; 761 NW2d 784 (2008).[3] For purposes of this appeal, there appears to be no dispute that plaintiff and Bencheck were entitled to compensation beyond the $20 (and later $21) daily payments for their care of Eastman.

MCL 500.3145(1), the one-year-back rule of the no-fault act, provides in pertinent part:

> An action for recovery of personal protection insurance benefits payable under this chapter for accidental bodily injury may not be commenced later than 1 year after the date of the accident causing the injury unless written notice of injury as provided herein has been given to the insurer within 1 year after the accident or unless the insurer has previously made a payment of personal protection insurance benefits for the injury. If the notice has been given or a payment has been made, the action may be commenced at any time within 1 year after the most recent allowable expense, work loss or survivors loss has been incurred. *However, the claimant may not recover benefits for any portion of the loss incurred more than 1 year before the date on which the action was commenced.* [Emphasis added.]

In *Devillers v Auto Club Ins Ass'n*, 473 Mich 562, 574, 586; 702 NW2d 539 (2005), the Supreme Court held that the last sentence of MCL 500.3145(1) must be applied as written: a claimant's recovery for personal protection insurance benefits is limited to losses in-

---

[3] MCL 500.3107(1)(a) provides that personal protection insurance benefits are payable for "[a]llowable expenses consisting of all reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation."

curred during the one year that precedes commence-
ment of the action. The Court overruled *Lewis v Detroit
Automobile Inter-Ins Exch*, 426 Mich 93; 393 NW2d 167
(1986), in which the Court had extended the doctrine of
judicial tolling to the one-year-back rule, such that the
one-year-back limitation was tolled from the time the
insured made a specific claim for benefits until the date
the claim was formally denied. *Devillers, supra* at 577,
586. Nonetheless, the Court held that in "unusual
circumstances," i.e., fraud or mutual mistake, a court
may invoke its equitable power to avoid application of
the one-year-back rule. *Id.* at 590-591.

The six elements of actionable fraud were set forth in
*Hi-Way Motor Co v Int'l Harvester Co*, 398 Mich 330,
336; 247 NW2d 813 (1976):

> "[T]o constitute actionable fraud, it must appear: (1)
> That defendant made a material representation; (2) that it
> was false; (3) that when he made it he knew that it was
> false, or made it recklessly, without any knowledge of its
> truth and as a positive assertion; (4) that he made it with
> the intention that it should be acted upon by plaintiff; (5)
> that plaintiff acted in reliance upon it; and (6) that he
> thereby suffered injury. Each of these facts must be proved
> with a reasonable degree of certainty, and all of them must
> be found to exist; the absence of any one of them is fatal to
> a recovery." [Quoting *Candler v Heigho*, 208 Mich 115, 121;
> 175 NW 141 (1919).]

Fraud will not be presumed; it must be proven by "clear,
satisfactory and convincing evidence." *Hi-Way Motor
Co, supra* at 336.

Shortly after this Court granted plaintiff's applica-
tion for leave to appeal, the Supreme Court, in *Cooper v
Auto Club Ins Ass'n*, 481 Mich 399; 751 NW2d 443
(2008), specifically addressed whether an action for
fraud is subject to the one-year-back rule of MCL
500.3145(1). The Court stated:

Because the one-year-back rule only applies to actions brought under the no-fault act, and because a fraud action is not a no-fault action, i.e., an "action for recovery of personal protection insurance benefits payable under [the no-fault act] for accidental bodily injury," MCL 500.3145(1), but instead is an independent and distinct action for recovery of damages payable under the common law for losses incurred as a result of the insurer's fraudulent conduct, *we hold that a common-law cause of action for fraud is not subject to the one-year-back rule.* [*Id.* at 401 (emphasis added).]

The Court clarified that, because a fraud claim is separate from a no-fault claim, a court does not need to invoke its equitable power in the fraud action to avoid application of the one-year-back rule. *Id.* at 413. "[T]he no-fault rules simply do not apply" to the fraud claim. *Id.*

However, the Supreme Court cautioned that, because some insureds may attempt to circumvent the one-year-back rule by asserting a common-law fraud claim against an insurer, "trial courts should exercise special care in assessing these types of fraud claims." *Id.* at 413-414. Regarding the reliance element of fraud, the Court stated:

In particular, courts should carefully consider in this context whether insureds can satisfy the reliance factor. Insureds must "show that any reliance on [the insurer's] representations was reasonable." *Foreman v Foreman,* 266 Mich App 132, 141-142; 701 NW2d 167 (2005). Because fraud cannot be "perpetrated upon one who has full knowledge to the contrary of a representation," *Montgomery Ward & Co v Williams,* 330 Mich 275, 284; 47 NW2d 607 (1951), insureds' claims that they have reasonably relied on misrepresentations that clearly contradict the terms of their insurance policies must fail. One is presumed to have read the terms of his or her insurance policy, see *Van Buren v St Joseph Co Village Fire Ins Co,* 28 Mich 398, 408 (1874); therefore, when the insurer has made a statement that clearly conflicts with the terms of the insurance policy, an insured cannot argue that he or she reasonably relied on that statement without

questioning it in light of the provisions of the policy. See also *McIntyre v Lyon*, 325 Mich 167, 174[;] 37 NW2d 903 (1949); *Phillips v Smeekens*, 50 Mich App 693, 697; 213 NW2d 862 (1973). In addition, insureds will ordinarily be unable to establish the reliance element with regard to misrepresentations made during the claims handling and negotiation process, because during these processes the parties are in an obvious adversarial position and generally deal with each other at arm's length. See *Mayhew v Phoenix Ins Co*, 23 Mich 105 (1871) (Where the insured has the same knowledge or means of knowledge as the insurer, the insurer cannot be regarded as occupying any fiduciary relationship that would entitle the insured to rely on the insurer's representations, and a settlement hastily made with the insurer under such circumstances will not be set aside for fraud. Insureds are bound to inform themselves of their rights before acting, and, if they fail to do so, they themselves are responsible for the loss.); *Nieves v Bell Industries, Inc*, 204 Mich App 459, 464; 517 NW2d 235 (1994) ("There can be no fraud when a person has the means to determine that a representation is not true."). However, when the process involves information and facts that are exclusively or primarily within the insurers' "perceived 'expertise' in insurance matters, or facts obtained by the insurer[s] in the course of [their] investigation, and unknown" to the insureds, the insureds can more reasonably argue that they relied on the insurers' misrepresentations. 14 Couch, Insurance, 3d, § 208:19, p 208-26; see also *Crook v Ford*, 249 Mich 500, 504-505; 229 NW 587 (1930); *French v Ryan*, 104 Mich 625, 630; 62 NW 1016 (1895); *Tabor v Michigan Mut Life Ins Co*, 44 Mich 324, 331; 6 NW 830 (1880). [*Id.* at 414-416.]

### C. APPLICATION OF *COOPER*[4]

Even assuming that Abdey made a fraudulent misrepresentation when, in response to Bencheck's

---

[4] We note that while plaintiff, in her appellate brief, cited *Cooper* for the proposition that the one-year-back rule does not apply to a fraud claim, plaintiff failed to address the Supreme Court's cautionary notes regarding the reliance element of fraud.

inquiries about additional benefits, he told her that additional benefits were not available to her or when, in the absence of such an inquiry, he failed to inform Bencheck and plaintiff that additional benefits were available to them, plaintiff cannot establish that either she or Bencheck relied on the fraudulent misrepresentation. Abdey's representation did not involve information or facts that were exclusively or primarily in the control of defendant. Rather, Abdey's misrepresentation concerned what benefits were available to plaintiff and Bencheck for their care of Eastman under the no-fault act. Plaintiff and Bencheck had the means, i.e., consultation with a lawyer, to determine whether Abdey's representation was true. Indeed, soon after plaintiff learned that additional benefits might be available for her care of Eastman, she consulted a lawyer and the present case was initiated shortly thereafter. Plaintiff does not claim, nor is there even the slightest hint of evidence, that defendant in any way prevented her or Bencheck from determining the truthfulness of Abdey's representation. Because plaintiff and Bencheck had the means to determine the accuracy of Abdey's representation, plaintiff is not able to establish that either she or Bencheck relied on Abdey's representation. Accordingly, plaintiff's claim for fraud fails.

Because plaintiff cannot establish a claim for fraud and because the one-year-back rule bars plaintiff's no-fault claim for benefits that accrued before July 20, 2005, the trial court did not err by granting defendant's motion for partial summary disposition. We therefore affirm the trial court's order granting the motion.

Affirmed.